1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| MELVIN MILLER, | ) | Case No. EDCV-06-0001 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION |
| v. | ) | |
| | ) | |
| JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

**I.    PROCEEDINGS**

Plaintiff Melvin Miller filed a Complaint on January 20, 2006, seeking review of the Commissioner of Social Security's denial of plaintiff's applications for benefits.  The parties have filed a consent to proceed before a United States Magistrate Judge.  This matter is before the Court on the parties' cross-motions for summary judgment, respectively "Plaintiff's Motion" and "Defendant's Motion".[1]

---

[1]Plaintiff filed a motion for summary judgment on April 26, 2006. Defendant filed a cross-motion for summary judgment and an opposition on June 28, 2006.

1

After consideration of the record as a whole and the applicable law, Defendant's Motion is granted, and Plaintiff's Motion is denied because the findings of the Administrative Law Judge ("ALJ") are supported by substantial evidence and are free from material error.[2]

## II.     BACKGROUND AND SUMMARY OF ADMINISTRATIVE DECISION

On November 16, 1998, plaintiff filed an application for disability insurance benefits.  (Administrative Record ("AR") 12, 69, 72-74).  Plaintiff asserted that he became disabled beginning on August 1, 1998, due to physical and mental impairments.  (AR 72-74).  On September 11, 2000, an attorney-advisor assigned to decide plaintiff's case found that plaintiff was disabled from August 1, 1998 to August 1, 2000, and granted him disability insurance benefits.  (AR 41-46).  On January 12, 2001, plaintiff filed another application for disability insurance benefits, and on April 19, 2001, was granted benefits beginning September 12, 2000.  (AR 12, 65, 69).

On July 30, 2002, the Appeals Council vacated the above-referenced decision and benefit awards, consolidated the applications, and remanded the case for further proceedings.  (AR 68-71).

An ALJ examined the medical record and heard testimony from a medical expert, and a vocational expert on December 10, 2002.  (AR 329-41).  Although plaintiff's counsel appeared at the hearing, plaintiff did not appear.  (AR 12).  On May 21, 2003, the ALJ found that:  (1) plaintiff suffered from the following severe impairments:  schizoaffective disorder, borderline intellectual functioning, a learning disability, degenerative joint disease, and osteoarthritis of the left knee

---

[2]The harmless error rule applies to the review of administrative decisions regarding disability.  See Batson v. Commissioner, 359 F.3d 1190, 1196 (9th Cir. 2004) (applying harmless error standard); see also Stout v. Commissioner, 454 F.3d 1050, 1054-56 (9th Cir. 2006) (discussing contours of application of harmless error standard in social security cases).

(AR 16); (2) plaintiff's impairments or combination of impairments did not meet or medically equal one of the listed impairments (AR 16, 19); (3) plaintiff did not retain the residual functional capacity to perform his past relevant work (AR 19); (4) plaintiff retained the residual functional capacity to perform a significant range of light work[3] (AR 18, 19); and (5) based on this residual functional capacity, there are a significant number of jobs in the national economy that plaintiff could perform, including, bench assembler and hand packer.  (AR 18, 19, 20).  The Appeals Council plaintiff's request to review the ALJ's decision.  (AR 5-7).

## III.    APPLICABLE LEGAL STANDARDS

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months.  Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

---

[3]The ALJ noted that plaintiff:  (i) could stand and walk for two to four hours out of an eight hour day with frequent breaks; (ii) could sit for eight hours; (iii) needed to use an assistive device for long distance walking or uneven terrain; (iv) could lift and carry ten pounds frequently and twenty pounds occasionally;  (v) had occasional postural limitations: (vi) was limited to simple repetitive tasks in an object-oriented environment, with no complex literacy skills; (vii) could read simple written instructions; and (viii) could work around small groups of people. (AR 17, 19).

(1)     Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is not disabled.  If not, proceed to step two.

(2)     Is the claimant's alleged impairment sufficiently severe to limit his ability to work?[4]  If not, the claimant is not disabled.  If so, proceed to step three.

(3)     Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is disabled.[5]  If not, proceed to step four.

---

[4]At step two of the sequential evaluation process, an impairment or a combination of impairments may be found not medically severe only if evidence clearly establishes slight abnormality that has no more than minimal effect on an individual's ability to work.  Webb v. Barnhart, 433 F. 3d 683, 687 (9th Cir. 2005). To determine whether or not an impairment is severe, the ALJ must determine whether a claimant's impairment or combination of impairments significantly limits his physical or mental ability to do "basic work activities."  See id., see also 20 C.F.R. §§ 404.1521 (a), 416.921(a).  Basic work activities are the "abilities and aptitudes necessary to do most jobs," such as (1) physical functions like walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling; (2) the capacity for seeing, hearing, speaking, understanding, carrying out, and remembering simple instructions; (3) the use of judgment; and (4) the ability to respond appropriately to supervision, co-workers, and usual work situations.  20 C.F.R. §§ 404.1521(b), 416.921(b).

[5]An impairment matches a listing if it meets all of the specified medical criteria.  Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett, 180 F.3d at 1098. An impairment that manifests only some of the criteria, no matter how severely, does not qualify.  Sullivan, 493 U.S. at 530; Tackett, 180 F.3d at 1099.  An unlisted impairment or combination of impairments is equivalent to a listed impairment if medical findings equal in severity to all of the criteria for the one most similar listed impairment are present.  Sullivan, 493 U.S. at 531.

4

(4)     Does the claimant possess the residual functional capacity to
        perform his past relevant work?[6]  If so, the claimant is not
        disabled.  If not, proceed to step five.

(5)     Does the claimant's residual functional capacity, when
        considered with the claimant's age, education, and work
        experience, allow him to adjust to other work that exists in
        significant numbers in the national economy?  If so, the
        claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th
Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

The ALJ has an affirmative duty to assist the claimant in developing the
record at every step of the inquiry.  Bustamante v. Massanari, 262 F.3d 949, 954
(9th Cir. 2001); see also Webb v. Barnhart, 433 F.3d 683, 687 (9th Cir. 2005) (ALJ
has special duty to fully and fairly develop record and to assure that claimant's
interests are considered).  The claimant has the burden of proof at steps one
through four, and the Commissioner has the burden of proof at step five.
Bustamante, 262 F.3d at 953-54 (citing Tackett); see also Burch, 400 F.3d at 679
(claimant carries initial burden of proving disability).  If, at step four, the claimant
meets his burden of establishing an inability to perform past work, the
Commissioner must show, at step five, that the claimant can perform some other
work that exists in "significant numbers" in the national economy, taking into
account the claimant's residual functional capacity, age, education, and work

---

[6]Residual functional capacity is "what [one] can still do despite [ones]
limitations" and represents an "assessment based upon all of the relevant
evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).  In determining a claimant's
residual functional capacity, an ALJ must consider all relevant evidence in the
record, including medical records, lay evidence, and the effects of symptoms,
including pain, that are reasonably attributed to a medically determinable
impairment.  Robbins v. Social Security, 466 F.3d 880, 883 (9th Cir. 2006)
(citations omitted).

5

1  experience. <u>Tackett</u>, 180 F.3d at 1100 (citing 20 C.F.R § 404.1560(b)(3)).  The

2  Commissioner may do so by the testimony of a vocational expert or by reference to

3  the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P,

4  Appendix 2 (commonly known as "the Grids").  <u>Id.</u>  When a claimant has both

5  exertional (strength-related) and nonexertional limitations, the Grids are

6  inapplicable and the ALJ should take the testimony of a vocational expert.  <u>Moore</u>

7  <u>v. Apfel</u>, 216 F.3d 864, 869 (9th Cir. 2000) (citing <u>Burkhart v. Bowen</u>, 856 F.2d

8  1335, 1340 (9th Cir. 1988)).

9       **B.    Standard of Review**

10      Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of

11  benefits only if it is not supported by substantial evidence or if it is based on legal

12  error.  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.

13  2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457

14  (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable

15  mind might accept as adequate to support a conclusion."  <u>Richardson v. Perales</u>,

16  402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere

17  scintilla but less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Young v.</u>

18  <u>Sullivan</u>, 911 F.2d 180, 183 (9th Cir. 1990)).

19      To determine whether substantial evidence supports a finding, a court must

20  "'consider the record as a whole, weighing both evidence that supports and

21  evidence that detracts from the [Commissioner's] conclusion.'"  <u>Aukland v.</u>

22  <u>Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting <u>Penny v. Sullivan</u>, 2 F.3d

23  953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming

24  or reversing the ALJ's conclusion, a court may not substitute its judgment for that

25  of the ALJ.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

26  ///

27  ///

28  ///

1    **IV.    DISCUSSION**

2          Plaintiff contends that the ALJ erred by:  (1) failing to consider a treating

3    psychologist's opinion; (2) failing to develop the record; (3) failing to consider a

4    state agency consultant's opinion; and (4) posing an incorrect hypothetical

5    question to the vocational expert based on a misconstruction of a consultative

6    examining physician's use of the term "frequent breaks."

7          **A.    The ALJ Did Not Commit Legal Error in Considering the**

8                  **Opinion of a Treating Psychologist**

9          Plaintiff contends that the ALJ erred by "inexplicably ignoring" a treating

10   psychologist's opinion rating plaintiff's mental dysfunction as "severe."

11   (Plaintiff's Motion at 4).  Plaintiff specifically refers to a September 1, 1999

12   clinical assessment by Dr. Rick Cox in which Dr. Cox noted that plaintiff was

13   depressed, had auditory and visual hallucinations, paranoia, and suicidal and

14   homicidal ideations, and suffered from a "severe" mental dysfunction.  (Plaintiff's

15   Motion at 2-4; AR 258-61).[7]  This Court rejects plaintiff's contention because the

16   ALJ's decision reflects that the ALJ in fact considered Dr. Cox's September 1,

17   1999 clinical assessment, and concluded that plaintiff suffered from a severe

18   mental impairment, albeit one that did not result in severe functional limitations.

19         First, the ALJ expressly stated that he had reviewed and carefully considered

20   all of the evidence in the record.  (AR 13, 19).

21         Second, the ALJ directly referenced and expressly considered opinions and

22   findings contained within the September 1, 1999 report in issue, as well as other

23   reports of Dr. Cox.  For example, the ALJ referenced mental health records dated

24   September 1999 which reflect that plaintiff appeared disheveled and smelled dirty.

25   (AR 15).  This statement appears in Dr. Cox's September 1, 1999 report.  (AR

26   260).  The ALJ noted that plaintiff reported problems with anger and thoughts of

27   _____

28         [7]Duplicate copies of the September 1, 1999 report are in the Administrative
     Record.  (AR 258-62, 276-79).

hurting people.  (AR 15).  This statement also appears in Dr. Cox's September 1, 1999 report.  (AR 260).  The ALJ referenced plaintiff's report of suffering from paranoid delusions, such as people conspiring against him.  (AR 15).  Dr. Cox's September 1, 1999 report reflects that plaintiff has paranoid delusions and often felt as though employers were conspiring against him.  (AR 260).  The ALJ's decision reflects that plaintiff was diagnosed with schizoaffective disorder.  (AR 15).  On September 9, 1999, Dr. Cox made such a diagnosis.  (AR 239).  The ALJ also notes that plaintiff underwent "Bender Gestalt" resulting in a suggestion of organicity-neurological impairment as a result of his childhood head injury.  (AR 15).  The record reflects that this information was contained in Dr. Cox's treatment notes.  (AR 250).  Thus, contrary to plaintiff's suggestion, it is clear that the ALJ considered Dr. Cox's opinions, including those contained within the September 1, 1999 report in issue.

Finally, the ALJ found that plaintiff had a "severe" mental impairment – a finding consistent with the September 1, 1999 opinion of Dr. Cox which plaintiff contends the ALJ inexplicably ignored.  (AR 16).  Specifically, the ALJ found that plaintiff had "severe" schizoaffective disorder, borderline intellectual functioning, and a learning disability.

Thus, although the ALJ did not expressly reference Dr. Cox's September 1, 1999 opinion that plaintiff's mental dysfunction was "severe," this Court is satisfied based upon the above-referenced evidence, that the ALJ did not err in failing to consider such opinion, and in fact, did consider it.[8]

---

[8]Even if the ALJ erred in failing expressly to discuss the treating psychologist's finding of "severe" mental dysfunction in September 1999, this Court finds such error harmless.  Plaintiff has not argued that the ALJ erroneously rejected or reached conclusions contrary to the September 1, 1999 opinion of Dr. Cox.  Indeed, on March 28, 2000, Dr. Cox opined that plaintiff reported decreased paranoia, and was "stable & doing ok".  (AR 241).  To the extent Plaintiff's

(continued...)

**B.     The ALJ Did Not Fail in His Duty to Fully and Fairly Develop the Record**

Plaintiff argues that the ALJ erroneously failed to develop the record by not obtaining records from plaintiff's special education classes or ordering I.Q. testing in response to a diagnosis of "rule out mild mental retardation" and "learning disability" by psychiatrist Dr. Inderjit S. Seehrai. (Plaintiff's Motion at 4). Plaintiff suggests that such records were material because they could possibly have revealed that he met the requirements of Listing 12.05C (Mental Retardation and Autism).  (Plaintiff's Motion 4).

The ALJ in a social security case has an independent duty to fully and fairly develop the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (citations omitted).  This duty extends to the represented as well as to the unrepresented claimant.  Id.  The ALJ's duty to develop the record is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Id. (citation omitted).  However, the ALJ's duty to develop the record further "is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence."  Mayes v. Massanari, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).  The ALJ may discharge this duty in several ways, including:  subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record.  Tonapetyan, 242 F.3d at 1150 (citations omitted).[9]

---

[8](...continued)
Motion may be read to argue that the ALJ improperly rejected Dr. Cox's September 1, 1999 opinion, or that the ALJ's determination regarding plaintiff's functional limitations is not supported by substantial evidence, this Court disagrees.

[9]Contrary to plaintiff's assertion, no heightened obligation to develop the record applies in this case due to an issue of the "cessation of benefits."  This case

(continued...)

1
2
3
4
5
6

The Court rejects plaintiff's assertion that the ALJ was required to further develop the record so that he could assess whether plaintiff met the requirements of Listing 12.05C (Mental Retardation and Autism).  Listing 12.05 requires that "the evidence [of mental retardation] demonstrates or supports onset of the impairment before age 22."  20 C.F.R. Pt. 404, Subpt. P, App.1, § 12.05.  Plaintiff was 54 years old at the time of the ALJ's decision – well over the age of 22.  (AR 13, 17).

7
8
9
10
11
12
13
14

First, a current I.Q. test would have little, if any relevance to establishing the onset of an impairment before the age of 22.  See Jones v. Apfel, 2000 WL 1456907, *13 (D. Or.) (I.Q. test would be irrelevant to determine whether claimant met or equaled Listing 12.05C because claimant was already 53 years old) Freeman v. Apfel, 208 F.3d 687, 692 (8th Cir. 2000) (rejecting claim that ALJ erred in failing to obtain I.Q. test because results would have limited relevance; claimant was 37 years old at time of hearing; finished tenth grade, participated in GED classes, and held semiskilled job).

15
16
17

18
19
20
21
22
23
24
25
26
27
28

---

[9](...continued)
does not involve a "cessation of benefits," which is a term of art generally used to describe the termination of disability benefits in a continuing eligibility case.  See, e.g., Hooker v. Health and Human Serv., 858 F.2d 525, 526 (9th Cir. 1988); Anderson v. Barnhart, 2003 WL 21735558, *1 (N.D. Cal.).  In continuing eligibility cases, the Commissioner will evaluate recipients of disability benefits from time to time to determine their continuing eligibility for benefits and may determine that a recipient is no longer eligible for benefits for reasons such as medical improvement.  Id; 20 C.F.R. § 416.989.  Plaintiff's case does not involve a continuing eligibility of disability benefits because the Appeals Council, on its own initiative, "reopened" the decisions granting plaintiff disability benefits based on good cause, i.e., the prior decisions appeared to be facially erroneous.  (AR 65-67, 70).  As such, although the Commissioner terminated plaintiff's benefits, such termination was not due to a finding that plaintiff was no longer disabled.  Rather, the termination of plaintiff's benefits was due to the Appeals Council decision to "reopen" the prior decisions and the ALJ's determination that plaintiff was not disabled at any time prior to May 21, 2003, the date of the decision.  (AR 20).

Second, as plaintiff reported that he attended special education classes only in high school – more than 30 years before the ALJ issued his decision – it is highly unlikely that such records would even be available.[10]

Third, the evidence in the record reflects that despite allegedly attending special education classes and having a history of learning disability, plaintiff was not mentally retarded.  Plaintiff graduated from high school in 1968 with a "C" average.  (AR 100, 146, 218).  Several years after high school,  plaintiff held jobs as a waxer and carpet cleaner for two companies and appears to have done so competently and successfully.[11]  (AR 104-05, 111, 157).  See Williams v. Sullivan, 970 F.2d 1178, 1185 (3d Cir. 1992) (rejecting mental retardation claim because claimant worked for most of his adult life and learned new tasks).

In this case, the Court finds that the ALJ was not required to expand the record because the record is not ambiguous or inadequate to allow for proper evaluation of the evidence relevant to the disability determination.[12]  Rather, the

---

[10]Plaintiff's November 1998 application reflects that he was enrolled in a special education program in high school between September 1966 and June 1968. (AR 100).  Plaintiff's January 2001 application reflects that he was enrolled in a special education program in high school between 1964 and 1968.  (AR 146).

[11]Plaintiff was a lead worker and supervised others in his work.  (AR 103-05, 113-14).  The Court notes that the dates provided by plaintiff regarding his employment as a waxer and carpet cleaner at B+W Service and at Ameriko Inc. are inconsistent.  Plaintiff's November 1998 application reflects that he worked at B+W Service from January 1983 to July 1993, and at Ameriko Inc. from July 1993 to September 1997.  (AR 111).  However, plaintiff's January 2001 application reflects that he worked at B+W Service from June 1976 to June 1986, and at Ameriko Inc. from June 1986 to September 1997.  (AR 157).

[12]Moreover, although an ALJ has a duty to develop the record further in certain circumstances, plaintiff bears the burden of demonstrating that he meets or equals a listing.  Tackett, 180 F.3d at 1098-99.  As the Commissioner points out, plaintiff has had the same attorney since November 1999 and has had ample

(continued...)

record is comprehensive, and includes five consultative examinations, as well as treatment notes from multiple physicians at the San Bernardino County Department of Behavioral Health and Arrowhead Fontana Family Health Center. (AR 183-86, 201-04, 216-21, 237-62, 263-268, 269-282, 283-86, 306-10). Notably, despite the multitude of doctors who examined him, plaintiff points to not a single medical professional or expert who recommended that plaintiff be administered an I.Q. test or who believed such a test was relevant or necessary to adequately evaluate plaintiff's condition.  The ALJ's failure to request such an I.Q. test, or to seek ancient and likely non-existent special education records did not constitute a failure of his duty to fully and fairly develop the record.[13]

_____

[12](...continued)
opportunity to present any existing records from his special education classes or to request I.Q. testing if he believed such evidence was truly necessary.

[13]Plaintiff also notes that, "although determinal [sic] to his own best interests, he did not appear at the hearing to give testimony in [sic] his own behalf. (Plaintiff's Motion 6).  To the extent plaintiff intends to suggest that error should be assigned to the ALJ because plaintiff failed to appear and testify, this argument lacks merit.  First, the ALJ's duty to develop the record further was not triggered because the record was not ambiguous or inadequate to allow for a proper evaluation of the evidence.  Mayes, 276 F.3d at 459-60.  Second, the record does not suggest that plaintiff's failure to attend the hearing and to testify may be due to his mental impairment.  See Higbee v. Sullivan, 975 F.2d 558, 562 (9th Cir. 1992) (per curiam) (finding ALJ failed in his duty to develop record because "the record suggests the failure [to cooperate] may be due to the very mental illness that rendered [plaintiff] eligible for benefits").  Third, even if the ALJ's duty to develop the record further arose in this case, the ALJ fulfilled this duty by (i) attempting to contact the claimant telephonically at the hearing (AR 340); (ii) keeping the record open for a week after the hearing to allow plaintiff's counsel time to contact plaintiff and to supplement the record; and (iii) advising plaintiff's counsel that he should let the ALJ know if more time was needed.  (AR 331-32, 340).  Tonapetyan, 242 F.3d at 1150.  The record does not reflect that plaintiff or his counsel requested an extension of time to offer plaintiff's testimony.  Indeed, plaintiff's counsel apparently advised the ALJ that the ALJ should decide the case
(continued...)

1
2

### C.   The ALJ's Failure to Address a State Agency Consultant's Opinion Was Not a Material Error

3
4
5

Plaintiff argues that the ALJ erred in failing to consider the assessment of state agency consultant, Dr. Giraldi, in determining plaintiff's mental residual functional capacity.  (Plaintiff's Motion 6).[14]

6
7
8
9
10
11
12
13
14

An ALJ is not bound by any findings by a state agency medical or psychological consultant. 20 C.F.R. § 404.1527(f)(2)(i).  However, because these agency physicians and psychological consultants are highly qualified and are also experts in Social Security disability evaluations, the ALJ "must consider" findings from an agency physician.  Id.  Furthermore, unless the treating physician's opinion is given controlling weight, the ALJ "must explain in the decision" the weight given to the agency physician's opinion. 20 C.F.R. § 404.1527(f)(2)(ii); see also SSR 96-6p (ALJ may not ignore state agency physician's opinions and must explain weight given to such opinions in their decisions).

15
16
17
18
19
20
21

Although the ALJ erred in not specifically addressing Dr. Giraldi's opinion or explaining the weight given to his opinion, such error was harmless because the ALJ's opinion was supported by substantial evidence and Dr. Giraldi's assessment is consistent with the ALJ's opinion and the record.  See Patrick v. Barnhart, 2004 WL 1618815, *8 (W.D. Tex.) (failure to discuss agency physician's opinion was error but was not prejudicial because opinion supported ALJ's decision and was consistent with claimant's testimony and substantial evidence of record); Alejandro

22

23
24
25

[13](...continued)
without plaintiff's testimony.  (AR 12).  Finally, even now, plaintiff has not proffered any evidence to suggest that his testimony might have materially impacted the ALJ's decision.

26
27
28

[14]Contrary to plaintiff's assertion, the record reflects that Dr. Giraldi was a consulting physician rather than an "examining" physician.  Consequently, the ALJ was not required to provide "specific and legitimate reasons" to reject such an opinion.  In any event, as noted above, as Dr. Giraldi's opinion was consistent with the ALJ's findings, the ALJ did not "reject" such opinion.

v. Barnhart, 291 F. Supp. 2d 497, 514-17 (S.D. Tex. 2003) (ALJ's error in failing to discuss agency doctor's opinion harmless because opinion was "downright unhelpful" and decision was supported by substantial evidence).

Dr. Giraldi opined that plaintiff was "moderately limited" in his ability to: understand, remember, and carry out detailed instructions; work in coordination with or proximity with others without being distracted by them; interact appropriately with the general public; accept instructions and respond appropriately to criticism from supervisors; and get along with coworkers or peers without distracting them or exhibiting behavioral extremes.  (AR 302-03).  Dr. Giraldi further opined that plaintiff was "not significantly limited" in his ability to: remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; ask simple questions or request assistance; maintain socially appropriate behavior and adhere to basic standard of neatness and cleanliness; respond appropriately to changes in work settings; be aware of normal hazards and take appropriate precautions; travel to unfamiliar places or use public transportation; and set realistic goals or make plans independently of others.[15] (AR 302-03).

---

[15]Plaintiff erroneously indicates that Dr. Giraldi assessed plaintiff as both "not significantly limited" and "moderately limited" in his ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.  Dr. Giraldi actually assessed plaintiff as "not significantly limited" in this respect.  (AR 303).

1    The ALJ found that plaintiff was mentally limited to simple, repetitive tasks
2    in an object-oriented environment with no complex literacy skill, and that he could
3    read simple written instructions and work around small groups of people.  (AR 19).
4    Dr. Giraldi's assessment is consistent with the ALJ's assessment of plaintiff's
5    mental residual functional capacity, which is supported by substantial evidence.
6    Accordingly, the ALJ's failure to discuss Dr. Giraldi's opinion was not a material
7    error.[16]

8    **D.    Substantial Evidence Supports the ALJ's Findings Regarding a**
9    **Consultative Physician and Such Findings Are Not Materially**
10   **Erroneous**

11   Plaintiff contends that the ALJ, based on an incorrect interpretation of the
12   term "frequent breaks" as used by consultative examining physician Dr. Eric Lee,
13   posed an inaccurate hypothetical question to the vocational expert.  This argument
14   lacks merit.

15   Dr. Lee opined that plaintiff "could be expected to stand and walk for 2-4
16   [hours ] out of eight-hours during a work day with frequent breaks secondary to his
17   severe left knee arthritis, deformity, and likely ligament damage."  (AR 309).  At
18   the December 10, 2002 hearing, the ALJ included this restriction in a hypothetical
19   question posed to the testifying vocational expert.  (AR 338-39).  The ALJ advised
20   the vocational expert that the ALJ construed the term "frequent breaks" to mean
21   "not where [plaintiff is] off the clock but would have to change from the standing
22   and walking to a seated position."  (AR 338-39).

23   Plaintiff argues that a common sense and fair reading of Dr. Lee's opinion
24   would be that plaintiff was to interrupt his work often secondary to his severe left
25   knee arthritis deformity and likely ligament damage.  (Plaintiff's Motion at 9).

26
27   _____

28   [16]The Court further finds that any error by the ALJ in failing expressly to
     incorporate Dr. Giraldi's opinions regarding plaintiff's "moderate" limitations into
     a hypothetical question posed to the vocational expert was harmless.

While the reading of Dr. Lee's opinion suggested by plaintiff may well be a "fair reading" of such opinion, the ALJ's interpretation was also reasonable given the context and the fact that plaintiff could alleviate the pain in his left knee by frequently changing from a walking or standing position to a seated position. Where, as here, the evidence "is susceptible to more than one rational interpretation," the Court must uphold the administrative decision.  Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002).  Moreover, plaintiff's counsel had the opportunity to object to the ALJ's interpretation of "frequent breaks" at the time of the hearing, or to pose a hypothetical based on his own "fair reading" of the term "frequent breaks," but did not do so.[17]  (AR 338-40).  Accordingly, ALJ's interpretation of the consultative examiner's assessment is supported by substantial evidence and such finding was not materially erroneous.

**V.   CONCLUSION**

For all of the foregoing reasons, Defendant's Motion is granted, and Plaintiff's Motion is denied.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: March 12, 2007

_____/s/_____

Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

---

[17]The Court has considered and rejected plaintiff's alternative request to remand this action for reconsideration of Dr. Lee's opinion.  (Plaintiff's Motion at 9).

16